# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SANDRA PORTER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the )<br>Social Security Administration, )<br>)<br>    Defendant. ) | Case No. CIV-14-850-D |

## REPORT AND RECOMMENDATION

Plaintiff Sandra Porter brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. United States District Judge Timothy D. DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. Having reviewed the administrative record (Doc. No. 10, hereinafter "R. __") and the parties' arguments and authorities, the undersigned recommends that the Commissioner's decision be reversed and remanded.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB application on May 27, 2011, seeking benefits on the basis of depression, headaches, neck problems, and osteoarthritis. R. 124-30, 140, 144. Following initial denial of her application and an administrative hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on January 3, 2013. R. 14-20, 27-48,

55-59, 62-64. The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of August 15, 2008. R. 16; *see* 20 C.F.R. § 404.1571. At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, depression, and anxiety. R. 16; *see* 20 C.F.R. § 404.1520(c). At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16-18; *see* 20 C.F.R. § 404.1520(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her impairments. R. 18-21; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b). [Plaintiff] can lift and carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk for 6 hours of 8; occasional rotation of the head both left and right as well as up and down. She can occasionally push and/or pull including the operation of hand and foot controls, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; as well as occasional[] handling, fingering and feeling. No climbing of ladders, ropes or scaffolds, working around smoke, vapors, fumes, extreme temperatures or concentrated respiratory irritants.

R. 18. The ALJ determined at step four that Plaintiff was unable to perform any of her past relevant work of clerical worker (as performed), police dispatcher, rehabilitation specialist (as performed), or inventory clerk. R. 21.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work

2

experience, and RFC—could perform. R. 21-22. Taking into consideration the testimony of a vocational expert ("VE") at the administrative hearing regarding the degree of erosion to an unskilled, light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform the occupations of information clerk (sedentary, semiskilled), telephone solicitor (sedentary, semiskilled), and call-out operator (sedentary, unskilled), and that such occupations offer jobs that exist in significant numbers in the national economy. R. 22; *see* R. 42-43 (VE identifying these three jobs pursuant to the ALJ's hypothetical at the hearing); 20 C.F.R. § 404.1520(a)(5)(ii).

Plaintiff's request for review was denied by the SSA Appeals Council on June 17, 2014. R. 1-5, 202-04. Thus, the ALJ's unfavorable decision stands as the Commissioner's final determination of Plaintiff's DIB application. *See* 20 C.F.R. § 404.981. Plaintiff now appeals.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270

(10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

On appeal, Plaintiff objects that the ALJ's RFC determination lacks support from substantial evidence in the record for several reasons. First, Plaintiff argues that the ALJ improperly failed to include mental work-related limitations in the RFC despite finding that Plaintiff suffered from "moderate difficulties" in social functioning. Pl.'s Br. (Doc. No. 12) at 5-6; Pl.'s Reply (Doc. No. 19) at 1-8.[1] Next, Plaintiff contends that the ALJ improperly rejected the opinions of Plaintiff's treating physician without adequate and legitimate justification. Pl.'s Br. at 3-5. Finally, Plaintiff attacks the ALJ's credibility finding on several grounds, including the ALJ's alleged failure to properly analyze her pain complaints under *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). Pl.'s Br. at 6-10; Pl.'s Reply at 8-9.

Because the undersigned finds that remand is warranted on the first basis listed above, and because Plaintiff's additional appellate challenges to her RFC determination—

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

4

and, particularly, Plaintiff's objection that the ALJ improperly assessed her treating physician's opinion and her credibility as relevant to her mental impairments—"may be affected by the ALJ's treatment of this case on remand," the undersigned does not address Plaintiff's alternative arguments for dismissal. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

    A. *The ALJ's Decision and Lack of Mental Impairments in the RFC*

In the written decision, the ALJ found at step two that Plaintiff's severe impairments included two mental impairments: depression and anxiety. R. 16. At step three, the ALJ found that Plaintiff was mildly restricted in activities of daily living and with regard to concentration, persistence, and pace. R. 17, 18. With regard to social functioning, however, the ALJ found that Plaintiff had a greater degree of functional limitation:

> In social functioning, Dr. Phillip Massad opined the claimant had moderate difficulties (Exhibit[] 5F). Records indicate in July 2011, that the claimant has had problems dealing with coworkers and authority figures[,] feeling that she was never "part of the group" (Ex. 4F). Function report[] completed by the claimant indicates that she talks on the phone, shops[,] but only leaves the house weekly (Ex. 4E). The Administrative Law Judge agrees and finds the claimant has moderate difficulties.

R. 17 (citing R. 315-28, Exhibit 5F: Psychiatric Review Technique ("PRT") of Phillip Massad, PhD; R. 309-14, Exhibit 4F: Psychological Evaluation of Reda Rasco, PsyD, and Daniel Madden, LPC; R. 162-69: Exhibit 4E: Plaintiff Function Report).

In his RFC finding, however, the ALJ prescribed no mental limitations of any kind, including no limitations upon Plaintiff's social functioning. R. 18. As explained herein, the ALJ failed to adequately support this critical omission, thus undermining both the RFC finding and subsequent findings in the sequential analysis in multiple ways.

1. *Social Security Ruling 96-8p*

First, the ALJ's RFC determination does not comply with the SSA's directive that "nonexertional capacity," including "mental limitations and restrictions," "be expressed in terms of work-related functions" or "[w]ork-related mental activities." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). The Tenth Circuit has rejected an ALJ's RFC determination where the ALJ "omitted, without explanation, impairments that he found to exist" as "moderate difficulties" at step three. *See, e.g.*, *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005); *Crowder v. Colvin*, 561 F. App'x 740, 745 (10th Cir. 2014); *accord Harrigan v. Colvin*, No. CIV-14-113-R, 2015 WL 1014611, at *3 (W.D. Okla. Mar. 9, 2015).

> A moderate impairment is not the same as no impairment at all. Instead, it "supports the conclusion that the individual's capacity to perform the activity is impaired," [Soc. Sec. Admin., *Program Operations Manual System* ("POMS"), ch. DI, subch. 24510.063.B.2 (emphasis omitted)], and therefore must be related with sufficient precision in a dispositive hypothetical to a VE and in an RFC finding.

*Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (alteration, citation, and internal quotation marks omitted).

In *Crowder* and *Wiederholt*, the Tenth Circuit emphasized that if an ALJ chooses to assess a moderate mental impairment at step three, "but not to include any limitation" in the relevant functional area in the RFC finding, "he should explain the basis for his decision." *Crowder*, 561 F. App'x at 746 (discussing moderate limitation in concentration, persistence, or pace); *accord Wiederholt*, 121 F. App'x at 839 (same). Here, the ALJ omitted from the RFC any limitation stemming from Plaintiff's difficulties in social functioning. Further,

6

none of the ALJ's discussion of Plaintiff's mental impairments suffices as an adequate explanation of this omission. *See Crowder*, 561 F. App'x at 745; R. 20, 21.

First, the ALJ references Exhibit 4F, which is the Psychological Evaluation completed by Dr. Rasco and Counselor Madden that had been relied upon at step three to support the ALJ's finding of moderate difficulties in social functioning:

> As for the opinion evidence, Dr. Matt opined that the claimant should be able to sit, walk and/or stand for a full workday, lift/carry objects without limitations, hold a conversation, respond appropriately to questions, carry out and remember instructions (Exhibit 4F). The [ALJ] has considered this opinion; however, in reading the evidence in a light most favorable to the claimant, the [ALJ] finds that the claimant is more restricted than Dr. Matt found [her] to be.

R. 20. This explanation clearly cannot support the lack of any mental limitations, however: there is no opinion from a "Dr. Matt" or similar contained in Exhibit 4F or elsewhere in the record. Even assuming that the ALJ meant to refer to either the Dr. Rasco/Counselor Madden Psychological Evaluation (Exhibit 4F) or one of the reports from Dr. Massad (Exhibits 5F and 6F), none of these mental-health records contain the opinion the ALJ purports to cite in the first quoted sentence above. *See* R. 310-32.

Next, in attempting to explain his rationale for the RFC determination, the ALJ states:

> The [ALJ] finds that the claimant can perform work-activities within the [RFC] stated above. Testimony reveals she has a valid driver's license and continues to drive, cook, perform household chores and visit with others. Although she suffers with . . . shortness of breath she continues to smoke a pack of cigarettes daily as well as occasional marijuana. Function Report and Third Party Report indicate[] that she tends to her personal hygiene, prepares meals, household chores, drives and shops. The claimant also notes that she has had depression for years. Her work history is sporadic but she was able to work despite depression. While her depression may have some mild

7

> restrictions on her activities, there is no evidence that this condition and treatment significantly affect[] her ability to perform work-related activities. She does not attend mental health and has not needed psychiatric treatment or counseling. **The [ALJ] finds that while the claimant has some limitations for work activities**, those limitations do not prevent all work activities.

R. 21 (emphasis added) (citation omitted).

Contrary to the Commissioner's argument on appeal, this statement likewise does not provide a sufficient explanation for the ALJ's failure to include any mental restrictions in the RFC. *See* Def.'s Br. (Doc. No. 18) at 17. Accepting the ALJ's statement for what it says, the determination that Plaintiff's mental impairment does not prevent *all* work activity is not an adequate explanation for failing to include *any* work-related mental limitations in the RFC. Indulging in alternative interpretations—e.g., that the ALJ intended to conclude that Plaintiff's mental impairment does not result in any functional limitations—would require speculation not supported by the language actually set forth or by the ALJ's step-three finding of moderate mental restrictions. *See Jaramillo*, 576 F. App'x at 876 ("[M]oderate limitations must be accounted for in an RFC finding and, consequently, in a dispositive hypothetical to a VE." (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Rather, the language in bold print above strongly suggests that the ALJ actually intended to include "some limitations for work activities" relevant to Plaintiff's social functioning or depression in the RFC—but no such limitations ultimately were incorporated into the written RFC finding. *See* R. 18, 21.

Because the ALJ did not include any mental limitations in the RFC or explain why Plaintiff's moderate mental restrictions do not result in any such limitations, the ALJ's RFC analysis is erroneous and lacks substantial evidence under SSR 96-8p and Tenth Circuit

authority. *See* SSR 96-8p, 1996 WL 374184, at *6; *Crowder*, 561 F. App'x at 745; *Wiederholt*, 121 F. App'x at 839; *cf. Bales v. Colvin*, 576 F. App'x 792, 795, 797-98 (10th Cir. 2014) (upholding ALJ's RFC determination that did not incorporate a step-three finding of a moderate restriction in concentration, persistence, or pace, where ALJ did limit claimant to "simple, routine tasks" with "no significant public interaction" and only "incidental" interaction with others and also provided specific discussion of claimant's abilities in that functional area).

2. *The Vocational Expert Hypothetical*

As noted, the ALJ's written RFC and step-five findings do not reflect any limitation related to social functioning. The ALJ's hypothetical to the VE at Plaintiff's hearing, however, did include such a limitation: the ALJ asked the VE to consider an individual who "can relate to others on a superficial work basis." R. 42. The VE purportedly took that limitation into account when concluding that Plaintiff retains the ability to perform the jobs of information clerk, telephone solicitor, or call-out operator. R. 42-43.

The undersigned cannot conclude that the ALJ's RFC errors were rendered harmless by the VE hypothetical. It is not apparent that the dispositive hypothetical encompassed all of the functional limitations properly suggested by the ALJ's step-three finding of moderate mental restrictions—or, for that matter, those found by Dr.

9

Massad[2]—and the undersigned will not speculate on what such limitations should have been. Further, notwithstanding the VE's testimony, it appears that the ALJ's incorporation of the moderate restriction found by Dr. Massad, as well as by the ALJ at step three, reasonably would have affected the ALJ's conclusion that Plaintiff was able to perform the occupations of information clerk, telephone solicitor, or call-out operator, based upon the *Dictionary of Occupational Titles* ("DOT") descriptions of these occupations. *See* R. 325; DOT 237.367-022, 1991 WL 672188 (4th rev. ed. 1991) (information clerk job requires "[s]ignificant" speaking and signaling as well as "[d]ealing with [people]"); *id.* 299.357-014, 1991 WL 672624 (telephone solicitor job requires "speak[ing] before an audience with poise, voice control, and confidence" and "[p]ersuading people"); *id.* 237.367-014, 1991 WL 672186 (call-out operator job requires "speak[ing] before an audience with poise, voice control, and confidence" and "[d]ealing with [people]"). This is an instance of a RFC determination that is inconsistent with the

---

[2] The ALJ's written decision fails to discuss Exhibit 6F, the Mental Residual Functional Capacity Assessment ("MRFCA") completed by consulting psychiatrist Dr. Massad. *See* R. 329. In Section I of the MRFCA, Dr. Massad assessed Plaintiff with moderate restrictions in the ability to understand, remember, and carry out detailed instructions and in the ability to interact appropriately with the general public. R. 329-30. In Section III of the MRFCA, Dr. Massad opined that Plaintiff "can perform simple and some complex tasks" and "can relate to others on a superficial work basis." R. 331. The ALJ's failure to address the MRFCA, particularly the Section III narrative, arguably is contrary to the regulatory requirement to "evaluate" and "consider" the opinion of Dr. Massad, and to the extent any aspect of it was rejected, "to provide specific, legitimate reasons" for that rejection. *See Doyal*, 331 F.3d at 763; 20 C.F.R. § 404.1527(c), (e)(2)(ii). *See generally* POMS ch. DI, subch. 25020.010.B.1 (directing that ALJs "must take the RFC assessment in section III and decide what significance the elements discussed in this RFC assessment have in terms of the person's ability to meet the mental demands of past work or other work" (emphasis omitted)).

dispositive VE hypothetical, which is a basis for reversal in itself. *See Wiederholt*, 121 F. App'x at 839; *Jaramillo*, 576 F. App'x at 876; *cf. Harrigan*, 2015 WL 1014611, at *3 (finding RFC analysis that failed to incorporate ALJ's own finding of moderate restrictions could not upheld as harmless error "because 'a failure to first make a function-by-function assessment of the individual's limitations or restrictions' could cause the ALJ to 'overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" (quoting SSR 96-8p, 1996 WL 374184, at *4)).

### B. Conclusion

Because the ALJ's RFC determination did not account for the moderate mental health restriction found by the ALJ himself at step three, and the ALJ did not sufficiently explain this omission, the decision of the Commissioner should be remanded as lacking substantial evidence to support that determination. *See Crowder*, 561 F. App'x at 745; SSR 96-8p, 1996 WL 374184, at *6.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned recommends that the decision of the Commissioner be REVERSED and REMANDED for further proceedings consistent with this recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such

objections must be filed with the Clerk of this Court by September 14, 2015. The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 31st day of August, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE